LUPERCIO TORRES ROSARIO, Petitioner, v. SIXTO M. SALDAÑA, WARDEN OF INSULAR PENITENTIARY, Respondent.

No. 401. Argued December 5, 1941.—Decided December 23, 1941.

*Santos P. Amadeo* and *R. V. Pérez Marchand* for petitioner. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for respondent.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Lupercio Torres is confined in the Insular Penitentiary where he is serving a term of one year imposed on him by the District Court of San Juan in which he was convicted of burglary in the first degree, committed, as charged in the information, one day in October 1941. In a *habeas corpus* petition filed by him in this court he alleges that he was born in 1925, and that on April 9, 1940, the Juvenile Court for the Judicial District of San Juan convicted him as a delinquent child of burglary and placed him in the custody of Esteban Miranda during good behavior. The petitioner maintains that upon being found to be a delinquent child by the juvenile court he became thenceforth subject to the exclusive jurisdiction of said court until he became of age, and that, as he was sixteen years of age yet, the District Court of San Juan

was and still is without jurisdiction to take cognizance of the alleged offense, and therefore that he is unlawfully deprived of his liberty.

There is no controversy as to the facts alleged by the petitioner. The whole issue hinges upon the determination of the scope of Section 8 of Act No. 37, approved March 11, 1915 (Session Laws, p. 71), to establish a system of juvenile courts, etc., which in its pertinent part reads as follows:

"Section 8.—For the purposes of this Act, the word 'parents' or 'parent' shall mean one or both parents, as is consistent with the intent of this Act; the word 'child' or 'children' shall include one child or more than one, as is consistent with the intent of this Act, and shall, unless specifically stated otherwise, include any child within Porto Rico who is under sixteen years of age, *or having once come within the jurisdiction of the juvenile court by the provisions of this Act has not attained its majority."* (Italics ours.)

For a better understanding of the legal provision above transcribed, it seems advisable, before entering into the study and discussion thereof, to apply the golden rule of statutory construction, which is, to discover the purpose sought by the lawmaker. The act itself, by its section 32, clearly expresses the same, thus:

"Section 32.—This Act shall be liberally construed to the end that its purposes may be carried out, such purposes being the protection and welfare of the child, and affording children the means of reforming, of receiving an education and of becoming law-abiding citizens.

"The proceedings and judgments determined herein shall only imply the exercise of an eminent 'patria potestad' by The People of Porto Rico over children, against whom no criminal precedent shall be established."

In the well-known work, "American Jurisprudence," referring to the nature and purpose of similar statutes, it is said:

*"Nature and Purpose.*—Statutes creating courts having jurisdiction of juvenile delinquents, and providing for the procedure therein

and the care and discipline of such delinquents, have been character-ized by the courts as progressive, humanitarian, and beneficial, and have been referred to as paternal and benevolent. They have for their object not the punishment of juvenile offenders for misconduct, criminal or otherwise, but their removal from the path of temptation and their direction into the path of rectitude by preventive and corrective means. Their operation is intended to check the criminal tendency in its inception, and protect the unformed character in the facile period from improper environment and influences, to give to the weak and immature a fair fighting chance for the development of the elements of honesty, sobriety, and virtue essential to good citizen-ship, and to prevent them from growing up to lead idle, dissolute, or immoral lives. In other words, the welfare of the child lies at the very foundation of the statutory scheme. A statute of this nature is an assertion of the state's power as parens patriae and its right to exercise proper parental control over those of its minor citizens who are disposed to go wrong."

The same work, when dealing with the construction of such statutes, says further:

"*Construction.*—As stated elsewhere, statutes creating courts having jurisdiction of juvenile delinquents and providing for the care and discipline of such delinquents are regarded by the courts as progressive, humanitarian, and beneficial, and therefore entitled to favorable or liberal construction, to the end that their manifest beneficent purpose may be effectuated to the fullest extent compatible with their terms."

Construing said act in the light of the liberal and ben-eficient spirit in which it has been conceived, and having in mind its purpose of affording the child "the means of re-forming, of receiving an education and of becoming a law-abiding citizen," we must of necessity conclude that neither the letter nor the spirit of the statute leaves any room for doubt that the phrase "or having once come within the juris-diction of the juvenile court by the provisions of this Act has not attained its majority," means that a person within the scope of the above definition can not be tried or sentenced by a court of ordinary jurisdiction, as is the District Court of San Juan.

At first view this construction seems to be discriminatory against such minors under 21 years of age as have not committed any fault or violation of law before becoming sixteen years old. But if it is borne in mind that either by reason of the surroundings in which they are born and brought up, or of congenital defects due to diverse causes, or of other circumstances that would be long to mention, there are minors who from early childhood show their tendency to do evil, it does not seem either arbitrary or capricious that the lawmaker should have deemed it just and proper to protect, and look after, them until they become of age, thus affording them a better opportunity to correct their defects or proclivities than is needed by those who are born and live and are brought up in normal surroundings. It is true, as maintained by the prosecuting attorney, that there are decisions which hold that a juvenile court retains its jurisdiction, in connection with the case in which it has intervened, only until the minor has attained the age of sixteen, and that any offense committed after attaining that age should be tried before the ordinary courts. See *State ex rel. Corella* v. *Pence*, (1924, Mo.), 262 S. W. 360; and *State* v. *Porterfield*, 264 S. W. 386. In the cited cases the statute involved read thus:

"When jurisdiction has been acquired under the provisions of this Act over the person of a child, such jurisdiction shall continue, *for the purpose of this article,* until the child shall have attained its majority."

In 31 American Jurisprudence 799, cited by the prosecuting attorney, the decisions on the question are summarized as follows:

"*Jurisdiction as Continuing.*—As a general rule, under statutory provisions in the various states, juvenile courts have continuing jurisdiction over an infant delinquent or offender. The time during which this jurisdiction continues is usually during the minority of the infant, but at least, as the cases hold, it does not cease merely on the adjudication of delinquency and order of commitment. The

purpose of a statutory provision declaring that when jurisdiction of the juvenile court has been acquired over the person of a child, such jurisdiction shall continue, for the purposes of the statute, until the child has attained majority, has been said to be to enable the state, under proper circumstances, to take over the custody of delinquent children in order to secure their training and reformation; and the power has been regarded as not dependent wholly upon statutes, it being said that its origin may be traced to that equitable doctrine that 'equity acts upon the person,' and, thus acting, finds no more inviting field for its operation than in the protection of the personal rights of infants. It has been held that a statute providing that when jurisdiction has been acquired under the provisions of the juvenile court law over a child, 'such jurisdiction shall continue for the purpose of this article, until the child shall have attained its majority,' should be construed as meaning that when the juvenile court obtains jurisdiction of a delinquent, its retention of that jurisdiction until the delinquent attains the age of twenty-one is a retention for the purposes of the proceedings in which jurisdiction was obtained, and is not to be construed as excluding the jurisdiction of the criminal courts to proceed against the infant after he attains the age of eighteen (sixteen, according to our law) on charges of crime committed between that time and his becoming twenty-one years of age." (Parenthetical matter supplied.)

As we have seen, our statute does not so restrict the jurisdiction of our juvenile courts but rather continues considering the delinquent person "as a child" "for the purpose of this Act." (Section 8.)

As the District Court of San Juan was without jurisdiction to take cognizance of the offense charged against the petitioner, the judgment rendered by that court on November 21, 1941, whereby he was confined to the Insular Penitentiary, is void and, consequently, the imprisonment to which he is subjected is illegal and he should be discharged and delivered to the Juvenile Court of San Juan for further proceedings in accordance with the law.

Mr. Justice Todd, Jr., took no part in the decision of this case.